Ogonna Brown, Esq.
Nevada Bar No. 7589
OBrown@lrrc.com
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV  89169
Tel:    702.949.8200
Fax:    702.949.8398

*Attorneys for Plaintiff Louis Naiman*

Brian K. Murphy, Esq.
murphy@mmmb.com
Jonathan P. Misny, Esq.
misny@mmmb.com
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Tel:    614.488.0400
Fax:    614.488.0401

*Pro Hac Vice Applications Pending*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| LOUIS NAIMAN, an individual, on behalf of himself and others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>BLUE RAVEN SOLAR, LLC, a Utah limited liability corporation; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>          Defendant. | CIVIL ACTION FILE NO.<br><br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Louis Naiman ("Plaintiff" or "Mr. Naiman"), by and through his counsel of record, Lewis Roca Rothgerber Christie LLP and Murray Murphy Moul + Basil LLP, file this Class Action Complaint, alleging claims against Defendants Blue Raven Solar, LLC ("Blue Raven Solar") as authorized by Rule 23 of the Federal Rules of Civil Procedure.

### Preliminary Statement

1.       Plaintiff Louis Naiman ("Plaintiff" or "Mr. Naiman") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

109266848.1

2.     Mr. Naiman alleges that Blue Raven Solar, LLC ("Blue Raven Solar") commissioned automated telemarketing calls to Mr. Naiman and other putative class members without their prior express written consent.

3.     Mr. Naiman and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Naiman brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Blue Raven Solar.

4.     A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5.     Plaintiff Louis Naiman currently resides in Nevada.

6.     Defendant Blue Raven Solar, LLC is a Utah limited liability corporation with its principal place of business in Utah.  Blue Raven Solar engages in telemarketing conduct into this district and others throughout the nation in order to market its products and services for installation in residences in those locations.

**Jurisdiction & Venue**

7.     The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims*, 132 S. Ct. 740.

8.     The Court has personal jurisdiction over Blue Raven Solar because it engaged in telemarketing conduct into this district by commissioning a third party to make automated telemarketing calls into this district in order to market its products and services for installation in Nevada residences, and Plaintiff received such an automated telemarketing call in this district.

9.     Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this district, as the automated call at issue was made to and received by the Plaintiff in this district.

1

**TCPA Background**

2      10.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the

3  telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing …

4  can be an intrusive invasion of privacy [.]"  Telephone Consumer Protection Act of 1991, Pub. L.

5  No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

6  The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones

7      11.     The TCPA makes it unlawful "to make any call (other than a call made for

8  emergency purposes or made with the prior express consent of the called party) using an

9  automatic telephone dialing system or an artificial or prerecorded voice … to any telephone

10  number assigned to a … cellular telephone service."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The

11  TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C.

12  § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

13      12.     According to findings by the Federal Communication Commission ("FCC"), the

14  agency Congress vested with authority to issue regulations implementing the TCPA, such calls

15  are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater

16  nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and

17  inconvenient.

18      13.     The FCC also recognized that "wireless customers are charged for incoming calls

19  whether they pay in advance or after the minutes are used."  *In re Rules and Regulations*

20  *Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18

21  FCC Rcd. 14014, 14115, ¶ 165 (2003).

22      14.     In 2013, the FCC required prior express written consent for all autodialed or

23  prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.

24  Specifically, it ordered that:

25          [A] consumer's written consent to receive telemarketing robocalls must be signed
           and be sufficient to show that the consumer:  (1) received "clear and conspicuous
26          disclosure" of the consequences of providing the requested consent, i.e., that the
           consumer will receive future calls that deliver prerecorded messages by or on
27          behalf of a specific seller; and (2) having received this information, agrees

28

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Automated Telemarketing

15.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls    (statement    of    FCC chairman).

16.     "The FTC receives more complaints about unwanted calls than all other complaints combined."    Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Notice    of    Proposed    Rulemaking,    CG    Docket    No.    02-278,    at    2    (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

17.     In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016.  Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

18.     *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing.    Tara Siegel Bernard, *Yes, It's Bad. Robocalls,    and    Their    Scams,    Are    Surging*, N.Y.    Times    (May    6,    2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J.

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

(July 4, 2018), https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-them-1530610203.

19.     A technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent.  Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls in 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html.

**Factual Allegations**

Call to Mr. Naiman

20.     Plaintiff Naiman is a "person" as defined by 47 U.S.C. § 153(39).

21.     Mr. Naiman's telephone number, (707) 832-XXXX, is registered to a cellular telephone service.

22.     On April 8, 2019 at 11:01 AM, Mr. Naiman received an automated telemarketing call to his cellular telephone number from the caller ID (707) 210-0004.

23.     When Mr. Naiman answered the call, there was a distinctive click and a pause before the telemarketing sales representative came on the line.

24.     This click and pause is a telltale sign of a predictive dialer.  The click and pause signifies the algorithm of the predictive dialer operating.  The predictive dialer dials thousands of numbers at once and only transfers the call to a live agent once a human being is on the line.  As a result, this telemarketing activity shifts the burden of wasted time to call recipients such as Mr. Naiman.

25.     A predictive dialer is an automatic telephone dialing system ("ATDS") as that term is defined by the TCPA.

26.     Because of the predictive dialer, Mr. Naiman was greeted with dead air when he answered the call before a live person finally came on the line.

27.     The Caller ID for the call, (707) 210-0004, is a non-working "spoofed" number.

28.     The fact that the Caller ID was spoofed is further evidence of the use of an ATDS, as it typically takes a computer dialing system to manipulate the Caller ID that will display on the call recipient's phone.

29.     A telemarketing sales representative named "Ryan" came on the line and, using a scripted sales pitch, asked Mr. Naiman a series of questions to determine his interest in and qualifications for solar panel installation for his residence.

30.     "Ryan" told Mr. Naiman that his company was called "Renew Solar Power," although upon further research there do not appear to be any entities doing business in or engaging in telemarketing into the United States using that name.

31.     Upon verifying Mr. Naiman's qualifications, "Ryan" directly transferred the call to Blue Raven Solar while Mr. Naiman remained on the line.

32.     "Ammon Musselman" then came on the line and informed Mr. Naiman that the name of his company was "Blue Raven Solar" and proceeded to attempt to sell Mr. Naiman Blue Raven Solar products and services for installation in his residence.

33.     Musselman gave Mr. Naiman the website address of BlueRavenSolar.com, which is Blue Raven Solar's website, and informed Plaintiff that he was located in Las Vegas, Nevada. He provided Mr. Naiman his direct phone number of (702) 710-1287.

34.     Mr. Naiman provided an email address so that he could confirm the identity of the caller.  He proceeded to receive an email from Musselman listing Blue Raven Solar along with his contact information.

35.     Mr. Naiman is not a customer of Defendant or "Renew Solar Power" and has not consented to receive telemarketing calls prior to the receipt of these calls.

36.     Plaintiff and the other call recipients were harmed by these calls.  They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls, and their privacy was improperly invaded.  Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the class.

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV  89169

Lewis Roca
ROTHGERBER CHRISTIE

**Blue Raven Solar's Liability for its Agent's Conduct**

37.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

38.     In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.  *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

39.     In fact, the Federal Communication Commission has instructed that sellers such as Blue Raven Solar may not avoid liability by outsourcing telemarketing to third parties, such as "Renew Solar Power":

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions.  This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6588, ¶ 37 (2013) ("May 2013 FCC Ruling") (internal citations omitted).

40.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

---

[1] May 2013 FCC Ruling, 28 FCC Rcd. at 6574, ¶ 1.

41.   The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  *Id*. at 6586, ¶ 34.

42.   The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id.* at 6592, ¶ 46.

43.   Blue Raven Solar is liable for the telemarketing calls that were initiated by "Renew Solar Power" before being transferred to Blue Raven Solar.

44.   Blue Raven Solar hired "Renew Solar Power" to originate new business using automated telemarketing calls.

45.   Blue Raven Solar could have restricted "Renew Solar Power" from using automated telemarketing, but it did not.

46.   Blue Raven Solar also accepted the benefits of "Renew Solar Power's" illegal telemarketing by accepting live transfers of leads directly from "Renew Solar Power," despite the fact that those leads were generated through illegal telemarketing.

47.   Blue Raven Solar had absolute control over whether, and under what circumstances, it would accept a customer.

109266848.1                                             - 8 -

48.     Blue Raven Solar determined the parameters and qualifications for customers to be transferred to a live Blue Raven Solar representative and required "Renew Solar Power" to adhere to those requirements.

49.     Blue Raven Solar knew (or reasonably should have known) that "Renew Solar Power" was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.  Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

50.     By having "Renew Solar Power" initiate the calls on its behalf to generate new business, Blue Raven Solar "manifest[ed] assent to another person … that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

51.     "Renew Solar Power" transferred customer information directly to Blue Raven Solar.  Thus, the company that Blue Raven Solar hired has the "ability … to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling.

52.     Blue Raven Solar approved the "Renew Solar Power" script for determining whether a customer was eligible to be transferred directly to speak with a Blue Raven Solar employee, as discussed in the May 2013 FCC Ruling.

53.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information."  *Id.* at 6592-593, ¶ 46.  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent."  *Id.* at 6593, ¶ 46.

. . .

. . .

109266848.1

- 9 -

**Class Action Allegations**

54.     As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

55.     The class of persons Plaintiff proposes to represent is tentatively defined as:

> All persons within the United States to whom: (a) Blue Raven Solar, and/or a third party acting on its behalf, made one or more non-emergency telephone calls; (b) promoting Blue Raven Solar products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

56.     Excluded from the class are counsel, the Defendant, any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

57.     The class as defined above is identifiable through phone records and phone number databases.

58.     The potential class members number at least in the thousands.  Individual joinder of these persons is impracticable.

59.     Plaintiff is a member of the class.

60.     There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

a.   Whether Defendant violated the TCPA by using automated calls to contact putative class members' cellular telephones;

b.   Whether Defendant's agent(s) initiated calls without obtaining the recipients' prior express invitation or permission for the call;

c.   Whether Defendant is vicariously liable for the telemarketing conduct of its agent(s); and

d.   Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

61.     Plaintiff's claims are typical of the claims of class members.

62.     Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

63.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.   The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

64.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

65.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**Legal Claims**

**Count One:**
**Violation of the TCPA's Automated Call Provisions**

66.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

67.     The Defendant violated the TCPA (a) by initiating automated telephone solicitations to cellular telephone numbers, or (b) by the fact that others made those calls on its behalf.  *See* 47 U.S.C. § 227(b).

68.     The Defendant's violations were willful and/or knowing.

69.     Plaintiff and members of the class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

. . .

109266848.1

- 11 -

**Relief Sought**

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A.      Injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, from making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

B.      Because of Defendant's violations of the TCPA, Plaintiff Naiman seeks for himself and the other putative class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

C.      Plaintiff and members of the class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

D.      An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is a proper representative of the class, and appointing the lawyers and law firms representing Plaintiff as counsel for the class.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

109266848.1

- 12 -

E.      Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

DATED this 18th day of September, 2019

LEWIS ROCA ROTHGERBER CHRISTIE LLP


By: */s/ Ogonna Brown*
 Ogonna Brown, Bar No. 7589
 OBrown@lrrc.com
 3993 Howard Hughes Parkway, Suite 600
 Las Vegas, NV  89169
 Tel.: 702.949.8200
 Fax: 702.949.8398

 Brian K. Murphy, Esq.
 Jonathan P. Misny, Esq.
 Murray Murphy Moul + Basil LLP
 *Pro Hac Application Pending*
 1114 Dublin Road
 Columbus, OH 43215
 Tel: 614.488.0400
 Fax: 614.488.0401

 *Attorneys for Plaintiff*