**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Louis Naiman,

      Plaintiff

v.

Blue Raven Solar, LLC, et al.,

      Defendants

and the consolidated case

Case No.: 2:19-cv-01643-JAD-EJY

**Order Denying Motions to Dismiss
and for Summary Judgment**

[ECF Nos. 59, 60]

Plaintiff Louis Naiman sues Blue Raven Solar, LLC; Renovation Referral, LLC; and Renovation's owner, Gabriel Alan Solomon, claiming that they commissioned nonconsensual automated calls to him and other putative class members in violation of the Telephone Consumer Protection Act.[1]  Last year, the magistrate judge granted Blue Raven's request for phased discovery, with the first phase limited to the question of vicarious liability.[2]  I then granted Blue Raven's unopposed motion to consolidate this case with one arising out of similar circumstances that was transferred to this district from the Southern District of Ohio.[3]  Blue Raven now moves for summary judgment, arguing that it cannot be held vicariously liable for Renovation's actions because no agency relationship exists between the companies.[4]  And Solomon moves to dismiss for lack of personal jurisdiction and improper venue.[5]  Because I find that this court has

---

[1] ECF No. 42 (first-amended complaint).

[2] ECF No. 29.

[3] ECF No. 78.

[4] ECF No. 60 (Blue Raven's motion for summary judgment).

[5] ECF No. 59 (Solomon's motion to dismiss).

1 jurisdiction over Solomon, venue is proper, and material factual disputes exist as to the agency

2 relationship between Blue Raven and Renovation, I deny both motions.

**Discussion**

**I.      Solomon's motion to dismiss [ECF No. 59]**

**A.      Relevant facts**[6]

On April 8, 2019, Naiman, a Nevada resident, received a call from a Renovation telemarketer about a "solar power initiative that's in the state of Nevada."[7]  The caller initially identified himself as calling from "Renew Solar Power"—later discovered to be one of Renovation's aliases[8]—but said "the local company" he called on behalf of was "Blue Raven."[9]  A month later, Naiman's attorney notified Blue Raven that Naiman intended to sue Blue Raven for violations of the TCPA.[10]  Naiman filed this suit in September 2019.[11]

Solomon, a Florida resident, owns and operates Renovation,[12] which also does business under other trade names.[13]  According to Naiman, Solomon "personally participated in the

---

[6] Well-pled facts from the complaint in this section are taken as true for purposes of Solomon's motion to dismiss but should not be construed as findings of fact.  *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 602 (9th Cir. 2018) ("Uncontroverted allegations in the complaint must be taken as true, and factual disputes are construed in the plaintiff's favor.").  This court may also consider facts from documents in discovery to resolve jurisdictional disputes.  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996) (holding that when resolving a motion to dismiss under Federal Rule 12(b)(2) and (3), a court may "consider facts outside the pleadings").

[7] ECF No. 60-2 at 15.

[8] ECF No. 60 at ¶ 7.

[9] ECF No. 60-2 at 15.

[10] *See* ECF No. 69-9.

[11] ECF No. 1.

[12] ECF No. 42 at ¶ 9.

[13] *Id.* at ¶ 27.

1  actions complained of" by "selecting some of the phone numbers that would be called,"

2  "choosing the automated" calling system, "personally loading the lists of numbers and sending

3  the calls at issue," and "personally authorizing" Renovation's general conduct.[14]  In his

4  responsive declaration, Solomon asserts that he did not direct Renovation to call Naiman, nor

5  does he "personally oversee the day to day calling operations of Renovation" or load the lists of

6  numbers Renovation uses.[15]

7       But Solomon does personally purchase the data used for Renovation's calling

8  campaigns.[16]  For example, when Blue Raven sent a set of Nevada zip codes to Renovation,

9  Renovation used it to obtain data for potential solar-power customers in those specific areas.[17]

10  Solomon purchases as many as 200 caller IDs every day to preclude cellular carriers from

11  marking Renovation's calls as possible scams.[18]  Renovation then ensures that the calls appear as

12  though they are coming from the same area code as the recipient.[19]  During the call to Naiman,

13  which came from a non-working Nevada number,[20] the Renovation caller purported to be local

14  to Nevada.[21]

15

16

17

18

19  [14] *Id.*

    [15] ECF No. 59-1 at ¶¶ 15–17.

20  [16] ECF No. 69-3 at 42–46.

21  [17] *See* ECF No. 69-6.

    [18] ECF No. 69-4 at 26.

22  [19] ECF No. 42 at ¶¶ 29–30.

23  [20] *Id.* at ¶¶ 30, 35.

    [21] ECF No. 60-2 at 15.

1      **B.      This court has personal jurisdiction over Solomon.**

2          The Fourteenth Amendment limits a forum state's power "to bind a nonresident

3    defendant to a judgment of its courts,"[22] and Federal Rule of Civil Procedure 12(b)(2) authorizes

4    a court to dismiss a complaint for lack of personal jurisdiction.  To determine its jurisdictional

5    reach, a federal court must apply the law of the state in which it sits.[23]  Because Nevada's long-

6    arm statute reaches the constitutional zenith,[24] the question here is whether jurisdiction

7    "comports with the limits imposed by federal due process."[25]  A court may only exercise

8    jurisdiction over a nonresident defendant with sufficient "minimum contacts with [the forum

9    state] such that the maintenance of the suit does not offend 'traditional notions of fair play and

10   substantial justice.'"[26]

11         The parties do not dispute that this court lacks general personal jurisdiction over

12   Solomon, so I need only evaluate whether this court maintains specific jurisdiction over him.

13   Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the

14   litigation."[27]  This means that "the plaintiff cannot be the only link between the defendant and

15   the forum,"[28] and "[t]he unilateral activity of those who claim some relationship with a

16

17

---

18   [22] *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

19   [23] *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)).

20   [24] Nev. Rev. Stat. § 14.065.

     [25] *Walden*, 571 U.S. at 283 (quoting *Daimler AG*, 571 U.S. at 125).

21   [26] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S.
22   457, 463 (1940)).

     [27] *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984))
23   (internal quotation marks omitted).

     [28] *Id.* at 285 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

1 | nonresident defendant cannot satisfy the requirement of contact with the forum State."[29]   Courts

2 | in the Ninth Circuit apply a three-prong test to resolve whether specific jurisdiction exists.[30]   The

3 | plaintiff bears the burden of satisfying the first two by showing that (1) the defendant

4 | "purposefully direct[ed] his activities toward the forum," and (2) the claim "arises out of or

5 | relates to the defendants' forum-related activities." [31]   An insufficient showing at any prong

6 | requires dismissal,[32] but if the plaintiff meets his burden, the defendant can only defeat

7 | jurisdiction if he "present[s] a compelling case" that jurisdiction would be unreasonable.[33]

8 |      To establish purposeful direction, a plaintiff must show that the defendant (1) "committed

9 | an intentional act," (2) "expressly aimed at the forum state," (3) "causing harm that the defendant

10 | kn[ew was] likely to be suffered in the forum state."[34]   The intentional-act prong requires "intent

11 | to perform an actual, physical act in the real world" and an "external manifestation of" that

12 | intent.[35]   Express aiming requires something more than just "untargeted negligence"; the

13 | defendant's conduct must be intended to reach a person "whom the defendant knows to be a

14 |

[29] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

15 | [30] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

16 |

[31] *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole*
17 | *Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)) (internal quotation marks omitted). Courts generally apply the purposeful-availment test to suits sounding in contract or negligence,
18 | *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007), and the purposeful-direction test to intentional torts.  *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
19 | 905 F.3d 597, 606 (9th Cir. 2018).  This lawsuit sounds in tort, so I do not address the purposeful-availment test.

20 | [32] *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995); *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d
21 | 1151, 1155 (9th Cir. 2006)) ("[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.").

22 | [33] *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 477).

23 | [34] *Axiom Foods*, 874 F.3d at 1069 (citations omitted).

[35] *Schwarzenegger*, 374 F.3d at 806 (citation omitted).

1  resident of the forum state."[36]  And the harm prong requires that the defendant's actions be

2  "performed for the very purpose of having their consequences felt in the forum state."[37]

3      Taking the well-pled facts in the complaint as true and construing factual disputes in

4  Naiman's favor, I find that this court has personal jurisdiction over Solomon.  Solomon

5  purposefully directed his activities toward this forum by personally purchasing the Nevada-

6  specific phone numbers that Renovation called and hundreds of local-area-code-caller IDs to

7  "outsmart" cell carriers' attempts to block or flag those calls.[38]  He also authorized the Blue

8  Raven calling campaign, served as Blue Raven's point of contact, and selected the automated

9  dialer that Renovation used for the campaign.[39]  These actions were all intentional, were

10  expressly aimed at people Solomon knew to be Nevada residents, and purposefully caused the

11  consequences—receipt of unwanted telemarketing calls—felt by those residents.  So, Solomon's

12  actions were purposefully directed toward Nevada.  And because Naiman's TCPA claim arises

13  directly out of those actions and the call that Naiman received as a result, he has established the

14  prima facie case necessary for this court to exercise personal jurisdiction over Solomon.

15      Solomon argues that this court's exercise of jurisdiction over him would offend

16  traditional notions of "fair play and substantial justice."[40]  Courts in the Ninth Circuit consider

17  seven factors to determine whether the exercise of jurisdiction over a nonresident defendant is

18

19  [36] *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087–88 (9th Cir. 2000), overruled in part on other grounds by *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) (en banc).

20  [37] *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989).

21  [38] ECF Nos. 42 at ¶ 27; 60-1 at 10; 69-3 at 42–46; 69-4 at 26; *see* ECF No. 60-2 at 15 (transcript of Renovation's call to Naiman showing that the caller first identified that they were calling on behalf of a company "in Nevada").

23  [39] ECF Nos. 42 at ¶ 27; 69-3 at 42–46.

[40] ECF Nos. 59 at 15–17; 71 at 10–11.

reasonable: (1) the "extent of [the defendant's] purposeful interjection into the forum state," (2) the "burden on the defendant of defending in the forum," (3) the "extent of conflict with the sovereignty of defendant's state,"; (4) the "forum state's interest in adjudicating the dispute," (5) judicial efficiency, (6) the "importance of the forum to plaintiff's interest in convenient and effective relief" (7) the "existence of an alternative forum."[41]

To defeat jurisdiction at this point, Solomon must make a "compelling case" using these factors;[42] the balance cannot just be "a wash."[43] Naiman alleges that Renovation's calls to Nevada residents likely number in the thousands,[44] so Solomon's interjection into this forum was substantial. And although it's always inconvenient for a nonresident defendant to litigate outside his home state, the second factor only favors the defendant if the "inconvenience is so great as to constitute a deprivation of due process."[45] Solomon does not attempt to meet that high bar.[46] Because the TCPA is a federal law, there is no conflict of sovereignty with Solomon's home state of Florida.[47] But Naiman's home state of Nevada "maintains a strong interest in providing an effective means of redress for its residents tortiously injured" by telemarketers who allegedly violate the TCPA.[48] Given that this case has now been consolidated with one transferred from another district,[49] the other defendants have not challenged this court's jurisdiction, and the

---

[41] *Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 790 (9th Cir. 1987).

[42] *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 477).

[43] *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003).

[44] ECF No. 42 at ¶ 68.

[45] *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 608 (9th Cir. 2018) (citation and internal quotation marks omitted).

[46] ECF Nos. 59 at 16; 71 at 11.

[47] *See, e.g., Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

[48] *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1200 (9th Cir. 1988).

[49] ECF No. 77.

1  plaintiffs seek class certification, judicial efficiency weighs in favor of finding jurisdiction.  And

2  although an alternative forum may exist in Florida, that fact does not alone make the exercise of

3  jurisdiction here unreasonable, especially when it would be inconvenient for the plaintiff to

4  litigate there.  On balance, these factors weigh in favor of exercising jurisdiction over Solomon.

5  His motion to dismiss for want of personal jurisdiction is thus denied.

6          **C.      Venue is proper in the District of Nevada.**

7          "[B]ecause subject[-]matter jurisdiction is not founded solely on diversity of

8  citizenship," venue is proper in Nevada if "a substantial part of the events or omissions giving

9  rise to the claim occurred" in the state.[50]  "[I]n a tort action," courts should consider "the locus of

10  the injury" suffered by the plaintiff.[51]  Here, Naiman is a Nevada resident who was in Nevada

11  when he received Renovation's call targeting Nevada residents and allegedly violating the

12  TCPA.  The locus of Naiman's injury is undoubtedly in Nevada.  Thus, venue is proper, and I

13  deny Solomon's motion to dismiss for improper venue.

14  **II.     Blue Raven's motion for summary judgment [ECF No. 60]**

15          Blue Raven and Renovation signed a contract in February 2018, laying out the terms of

16  their relationship and referring to Renovation as an "independent contractor."[52]  Renovation was

17  to call potential solar-power customers in specific areas who had consented to being called and

18  connect those interested to Blue Raven,[53] but the Renovation telemarketers were told to identify

19

20

---

21  [50] *Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1075 (9th Cir. 2001) (citations and internal quotation marks omitted).

22  [51] *Id.* at 1076 (citation omitted).

23  [52] ECF Nos. 60-1 at 8; 69-2 at 74–75.

[53] ECF No. 60-1 at 7–9.

themselves as calling from "Renew," not Blue Raven.[54]  On at least one occasion, Renovation impersonated Blue Raven during a call to a potential customer and set up an appointment on Blue Raven's behalf, which Blue Raven accepted.[55]

When a call-recipient sued both companies over TCPA violations, they did not defend, and default judgment was entered against them.[56]  Blue Raven and Renovation then amended their agreement to clarify its indemnification provisions.[57]  When other call-recipients complained about being called, Blue Raven reminded Renovation, and Renovation in turn reminded its team, not to mention Blue Raven on calls until the potential customers indicated interest in their solar-power initiative.[58]  Sometimes Blue Raven would ask for proof that the complainant consented to being called, sometimes it would take Renovation's word for it, and other times it would not ask.[59]  In July 2020, ten months into this litigation, Blue Raven terminated its contract with Renovation, accusing Renovation of falsifying its consent-to-call information.[60]  In moving for summary judgment, Blue Raven argues that the two companies did not have an agency relationship that would subject it to vicarious liability for Renovation's TCPA violations.[61]

---

[54] *Id.* at 9.

[55] *See* ECF No. 69-5.

[56] ECF No. 69-2 at 14.

[57] *Id.* at 74–75.

[58] *See generally, e.g.*, ECF No. 69-12.

[59] *See e.g.*, ECF No. 69-2 at 12–13.

[60] ECF No. 69-3 at 47.

[61] *See* ECF No. 60 at 13–27.

1    **A.      Legal standard**

2        Summary judgment is appropriate when the pleadings and admissible evidence "show

3    that there is no genuine issue as to any material fact and that the movant is entitled to judgment

4    as a matter of law."[62]  "By its very terms, this standard provides that the mere existence of some

5    alleged factual dispute between the parties will not defeat an otherwise properly supported

6    motion for summary judgment; the requirement is that there be no genuine issue of material

7    fact."[63]  A fact is material if it could affect the outcome of the case.[64]

8        On summary judgment, the court must view all facts and draw all inferences in the light

9    most favorable to the nonmoving party.[65]  So the parties' burdens on an issue at trial are critical.

10   When the party moving for summary judgment would bear the burden of proof, "it must come

11   forward with evidence [that] would entitle it to a directed verdict if the evidence went

12   uncontroverted at trial."[66]  If it does, the burden shifts to the nonmoving party, who "must

13   present significant probative evidence tending to support its claim or defense."[67]  But when the

14   moving party does not bear the burden of proof on the dispositive issue at trial, it is not required

15   to produce evidence to negate the opponent's claim—its burden is merely to point out the

16   evidence that shows the absence of a genuine material factual issue.[68]

17

18

19   [62] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

20   [63] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).
     [64] *Id.* at 249.

21   [65] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

22   [66] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)
     (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

23   [67] *Id.*
     [68] *Celotex*, 477 U.S. at 323.

1

**B.      There is a genuine dispute of material fact as to whether an agency relationship exists between Blue Raven and Renovation.**

2

3      While "a court may not automatically attribute a third-party caller's TCPA violations to a

4 defendant" who authorized the conduct, such a defendant may nonetheless be "held vicariously

5 liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by

6 federal common law, between the defendant and a third-party caller."[69]  "Whether an agency

7 relationship exists is for a court to decide based on an assessment of the facts of the relationship

8 and not based on how the parties define their relationship."[70]  Courts may consider "whether the

9 parties are trying to limit or prevent liability by characterizing their relationship as something

10 other than an agency relationship."[71]  The plaintiff has the "burden of establishing that an agency

11 relationship"—which may be created by express or implied actual authority, apparent authority,

12 or ratification—exists.[72]  Because I find a genuine material factual issue about whether Blue

13 Raven ratified Renovation's actions, summary judgment is not available.[73]

14

15

16

_____

17 [69] *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072 (9th Cir. 2019), as amended on denial of reh'g and reh'g en banc (May 6, 2019) (citing *Gomez v. Campbell-Ewald*
18 *Co.*, 768 F.3d 871, 878 (9th Cir. 2014), aff'd, 577 U.S. 153 (2016), as revised (Feb. 9, 2016)); *Gomez*, 768 F.3d at 879.

19 [70] *Henderson*, 918 F.3d at 1073 (citing Restatement (Third) of Agency § 1.02 (2006)); *see also United States v. Milovanovic*, 678 F.3d 713, 724–25 (9th Cir. 2012), as amended (May 22, 2012)
20 (finding an agency relationship between a principal and independent contractors).

21 [71] *Henderson*, 918 F.3d at 1073 (citing Restatement § 1.02 cmt. b).

[72] *Id.* (citing Restatement § 1.02 cmt. d); *see* Restatement §§ 2.01, 2.03, 4.01.
22

[73] Because I find that genuine disputes exist as to one theory of agency, and deny summary
23 judgment on that basis, I need not and do not address whether genuine issues of material fact exist as to the parties' relationship under the theories of express-actual, implied-actual, or apparent authority.

11

1    At every possible opportunity, Blue Raven sought to make clear that it and Renovation

2  are not in an agency relationship and that Renovation was merely an independent contractor.[74]

3  That labeling is of no consequence if Blue Raven ratified actions that Renovation took on its

4  behalf.  Ratification is "the affirmance of a prior act done by another" that "creates [the]

5  consequences of actual authority, including . . . creating an agency relationship when none

6  existed before."[75]  A purported principal may ratify its agent's actions by "accept[ing] the

7  benefit" of the action while having "actual knowledge" of the material facts; absent corrective

8  action, the purported agent could reasonably infer that the principal's silence was its assent.[76]

9  "'The fact that the principal had knowledge may be inferred' by circumstantial evidence."[77]

10 Ratification can also occur if the purported principal is "willful[ly] ignoran[t]" and chooses not

11 to investigate facts that a reasonable person would have investigated further.[78]

12    Both actual knowledge and willful ignorance are viable theories of ratification here.  Blue

13 Raven and Naiman agree that prior to Naiman's lawsuit, a plaintiff had jointly sued Blue Raven

14 and Renovation three times for similar TCPA-based claims.  In the first case, default judgment

15 was entered against the defendants and Renovation indemnified Blue Raven.[79]  The second and

16 third cases Renovation resolved.[80]  Naiman claims that this means Blue Raven had actual

17 knowledge of Renovation's TCPA-violating practices and procedures and turned a blind eye to

18

19  _____

[74] *See, e.g.*, ECF Nos. 60-1 at 8, 69-2 at 74–75, 69-3 at 19–24, 69-12 at 1–5.

20 [75] *Henderson*, 918 F.3d at 1073 (quoting Restatement § 4.01).

21 [76] *Id.* at 1073, 1076 (quoting Restatement §§ 4.01, 4.01 cmt. d, 4.01 cmt. f, 4.06);

[77] *Id.* at 1075 (quoting Restatement § 4.06 cmt. b).

22 [78] *Id.* at 1073–74, 1076 (quoting Restatement §§ 4.01 cmt. b, 4.06 cmt. d).

23 [79] ECF No. 69-2 at 14.

[80] *Id.*

those violations.  Blue Raven argues that if Renovation was violating the TCPA, it had no idea

that was happening and did not direct Renovation to do so.  But the record shows that—at least

in the case of the three-lawsuit plaintiff—Blue Raven knew that individuals who were on the do-

not-call list were being called by Renovation, violating the TCPA.[81]  Finally, although Blue

Raven discounts this point as irrelevant, both sides agree that after Naiman's counsel notified

Blue Raven of Naiman's intent to sue,[82] Blue Raven continued to receive formal complaint

letters[83] and observed online complaints about its telemarketing practices and their connection to

Renovation.[84]  While this was happening, it made "no effort to end its relationship with

[Renovation] or to ensure future TCPA compliance."[85]  "Instead, it continued to accept the

benefits of" Renovation's conduct and the 336 customers it provided Blue Raven through its

telemarketing efforts.[86]  A reasonable jury could find based on this evidence that Blue Raven

ratified Renovation's conduct, so a triable issue of material fact exists as to its actual knowledge.

      Even if the facts are insufficient to infer that Blue Raven had actual knowledge that

Renovation was violating the TCPA, there is a genuine issue of fact whether it ratified

Renovation's actions through willful ignorance.[87]  Despite the increasing number of complaints

and lawsuits, it took Blue Raven until July 2020—more than two years after the first lawsuit was

---

[81] ECF No. 69-2 at 15.

[82] ECF No. 69-9.

[83] *See, e.g.*, ECF No. 69-3 at 18, 69-11 at 2–3.

[84] *See, e.g.*, ECF No. 69-3 at 30, 69-12 at 5.

[85] *Henderson*, 918 F.3d at 1075–76; *cf. Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243, 246–48 (4th Cir. 2018) (finding no ratification where contractors facing TCPA complaints were terminated); ECF No. 69-2 at 12.

[86] ECF No. 69-14 at 5.

[87] *See Henderson*, 918 F.3d at 1076 (quoting Restatement § 4.06 cmt. d).

filed, more than a year from Naiman's counsel's intent-to-sue notification, and ten months into this litigation—to terminate the relationship between the two companies, allegedly for Renovation's falsification of consent-to-call information.[88]  Both sides agree that Blue Raven conducted *some* investigation of the complaints,[89] but the extent of that investigation and whether it was adequate to dispel concerns a that reasonable person would have under the circumstances is genuinely disputed.  If Naiman is to be believed, Blue Raven relied on Renovation's repeated, bald representations that all laws and regulations were being followed and that the complaints were frivolous, money-chasing schemes without looking into their merits.[90]  If Blue Raven is to be believed, it properly investigated the complaints, agreed that they were frivolous, and reasonably took a contractor at its word.[91]  But there is evidence in the record showing that Blue Raven either took no action or, in the context of an increasing number of complaints, unreasonably accepted Renovation's word as gospel.[92]  When Renovation defaulted in one TCPA lawsuit and settled two others in which Blue Raven was a named co-defendant, Blue Raven did not investigate whether those detailed allegations of TCPA violations were meritless; it just continued the calling campaign without increasing its level of scrutiny.[93]

---

[88] ECF No. 69-3 at 47.

[89] ECF Nos. 69 at 9; 69-2 at 11–12; 73 at 16.

[90] ECF No. 69 at 10 (citing ECF No. 69-2 at 13–16).

[91] ECF No. 73 at 17–18.

[92] ECF No. 69-2 at 13–16.

[93] The only change Blue Raven made after the three lawsuits was to clarify the indemnification provisions of its contract with Renovation.  ECF No. 69-2 at 74–75.  Blue Raven may have thought that its hands-off approach would circumvent the attachment of vicarious liability if Renovation violated any laws, but a jury might reasonably find that it attaches for that very reason.

1 | Therefore, triable issues of material fact exist as to whether Blue Raven ratified Renovation's

2 | conduct through its willful ignorance.

3 | Based on the record evidence, there are genuine disputes of material facts as to whether

4 | Blue Raven had actual knowledge or was willfully ignorant of Renovation's alleged TCPA

5 | violations when it accepted the benefits of those actions.  So, a reasonable jury could find that

6 | Blue Raven ratified Renovation's calling practices.  Blue Raven's motion for summary judgment

7 | is therefore denied.

8 | **Conclusion**

9 | **IT IS THEREFORE ORDERED** that defendant Gabriel Alan Solomon's motion to

10 | dismiss **[ECF No. 59]** and defendant Blue Raven Solar's motion for summary judgment **[ECF**

11 | **No. 60] are DENIED**.

12 | _____
U.S. District Judge Jennifer A. Dorsey

13 | September 24, 2021

14

15

16

17

18

19

20

21

22

23

15